UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAMILOLA ANIMASHAUN,

    Plaintiff,

-v-

IMAM AFIFY AND JEFF MCKOY,

    Defendants.



17-CV-6010 DGL
ORDER

## INTRODUCTION

*Pro se* Plaintiff Damilola Animashaun ("Plaintiff"), an inmate currently confined at the Mid-State Correctional Facility, has filed this action seeking relief pursuant to 42 U.S.C. § 1983 alleging a violation of his First Amendment right to practice his religion. Docket Item 1. After granting Plaintiff's motion for leave to proceed *in forma pauperis*, the Court screened the original Complaint under 28 U.S.C. §§ 1915(e) and 1915A and dismissed Plaintiff's claims against Defendant Afify, for lack of personal involvement, with leave to file an amended complaint.

Now before the Court is Plaintiff's Amended Complaint, which is also subject to initially screening under 28 U.S.C. §§ 1915(e) and 1915A. Docket Item 12. For the reasons that follow, the Amended Complaint sufficient to proceed to service against both Defendants.

## DISCUSSION

### I. Legal Standard

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007)

1

(citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). Section 1915A(b) provides that the Court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity if, at any time, the Court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted). However, leave to amend pleadings is properly denied where amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

To state a claim under Section 1983, a plaintiff must establish: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. *See* 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

## II. The Amended Complaint

The Amended Complaint largely reiterates Plaintiff's allegations that he was prohibited from registering as a Rastafarian while confined to the special housing unit ("SHU") during his incarceration at the Southport Correctional Facility ("Southport") in

2

December 2016. Docket Item 13 at 2. As a result, he was denied the right to practice his Rastafari religion, receive the designated religious meals, and grow dreadlocks. *Id.* On December 5, 2016, Defendant Afify issued a letter to Plaintiff stating:

> I checked with your records and found that your confinement in SHU began on **8/18/16** would [*sic*]. Confirm your transfer SHU to SHU as stated in your records. However, you need to wait until **8/18/17** for your next change of religion as specified in [Department of Corrections and Community Supervision ("DOCCS")] (**Directive # 4202. <u>Or after you get out of the SHU</u>)**.

*Id.* at 2, 5.

In the second cause of action, Plaintiff alleges that Defendant McKoy approved the policy contained in DOCCS Directive No. 4202 and thereby violated the First Amendment by barring inmates from registering or changing their religious designation while confined in the SHU. *Id.* at 3. Plaintiff further asserts that, due to this policy, he was required to wait well over one year to change his religious registration. *Id.*

### III. First Amendment Claims

The First Amendment rights of inmates to the free exercise of religion "are not as extensive as the rights enjoyed by an ordinary citizen. Rather, a prison inmate 'retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.' " *Washington v. Afify*, 968 F. Supp. 2d 532, 537 (W.D.N.Y. 2013) (quoting *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004); *see also Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Balanced against the constitutional protections afforded prison inmates . . . are the interests of prison officials charged with complex duties arising from administration of the penal system") (internal quotation marks omitted). For instance, "it is well-established that the enforcement of DOCS policies which restrict inmates in SHU from

3

attending congregate religious services is rationally related to a valid penological interest and is the least restrictive means of serving that interest." *Lewis v. Zon*, 920 F. Supp. 2d 379, 386 (W.D.N.Y. 2013) (internal quotation marks omitted).

Plaintiff alleges that he was prevented: from practicing Rastafari; changing his religious registration to Rastafarian; receiving the applicable religious meals; and obtaining a permit to grow dreadlocks during his SHU confinement. Further, although Plaintiff had already waited the requisite 12 months to change his religious designation, upon being admitted to the SHU, he then had to wait an additional nine months until his SHU sentence ended.

As discussed in the Court's August 29, 2017 order, although religious registration has been held to be a reasonable limitation on the accommodation of religious practices in prison, *see Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096-97 (2d Cir. 1997), it has been held that an inmate's assertion that he was prevented from changing his religious designation during his SHU confinement was sufficient to state a First Amendment claim. *See Gibson v. Yackeren*, No. 11-CV-294S, 2013 WL 3338645, at *3 (W.D.N.Y. July 2, 2013) ("[A]ny error in failing to designate [the prisoner] as Jewish, . . . logically extend[ed] to [his] inability to practice his religion); *but see Black v. Fischer*, No. CIVA908CV0231DNHDEP, 2010 WL 1133221, at *10 (N.D.N.Y. Feb. 4, 2010), *report and recommendation adopted*, No. 908-CV-0231 DNH, 2010 WL 1171125 (N.D.N.Y. Mar. 23, 2010) (granting summary judgment to prison officials in light of "a lack of any clear contrary guidance from either the Supreme Court or the Second Circuit" on the restriction of SHU inmates' ability to change religious designation in Directive No. 4202).

4

The Court concludes that because Plaintiff has alleged he was unable to practice his religion due to the restriction placed on SHU inmates in Directive No. 4202, his First Amendment claim may proceed against both Defendants.

**ORDER**

IT HEREBY IS ORDERED, that the Clerk of Court is directed to cause the United States Marshals Service to serve copies of the Summons, Amended Complaint, and this Order upon Defendants without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor;

FURTHER, that the Clerk of Court utilize the mailing address for non-inmate mail provided by the New York State Department of Corrections and Community Supervision's website, http://www.doccs.ny.gov/faclist.html., as needed;

FURTHER, that the Clerk of Court is also directed to forward a copy of this Order by email to Ted O'Brien, Assistant Attorney General in Charge, Rochester Regional Office <Ted.OBrien@ag.ny.gov>; and

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the Defendant is directed to answer the Complaint upon service.

SO ORDERED.

_____
David G. Larimer
United States District Judge

DATED: _____, 2019
Rochester, NY

5